**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

KATHLEEN LARUE NEWBERRY,

       Plaintiff,

v.                                       No. CV 16-192 CG

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

       Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** is before the Court on Plaintiff Kathleen Larue Newberry's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (the "Motion"), (Doc. 20), filed October 17, 2016; Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 22), filed December 16, 2016; and Plaintiff's *Reply in Support of Motion to Reverse and Remand for a Rehearing* (the "Reply"), (Doc. 27), filed January 20, 2017.

Ms. Newberry applied for disability insurance benefits ("DIB") on February 12, 2012. (Administrative Record ["AR"] 153). Ms. Newberry's application was denied both initially and upon reconsideration. (AR 53-62, 64-75). Ms. Newberry requested a hearing, (AR 84-85), which was held on July 9, 2014, before Administrative Law Judge ("ALJ") Christa Zamora, (AR 26). Ms. Newberry and an impartial vocational expert ("VE") testified at the hearing. (AR 26).

On October 3, 2014, ALJ Zamora found Ms. Newberry was not disabled and therefore not entitled to DIB. (AR 20). Ms. Newberry then requested the Appeals

Council review ALJ Zamora's decision. (AR 4). The Appeals Council denied her request for review, (AR 1), making ALJ Zamora's decision Defendant's final decision for purposes of this appeal.

Ms. Newberry now asserts that ALJ Zamora's decision incorrectly applied legal standards and is unsupported by substantial evidence. The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ applied the correct legal standards and her decision is supported by substantial evidence, the Court finds that the Motion should be **DENIED**.

## I.      Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or show . . . that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the

Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2015), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.      Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). In order to determine whether a

claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner must show the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III.   Background

Ms. Newberry filed for DIB claiming sciatic nerve damage, arthritis, arm and hand problems, asthma, panic attacks, high blood pressure, and a sleep disorder impaired her ability to work. (AR 153). At step one, the ALJ found Ms. Newberry had not engaged in substantial gainful activity since her alleged onset date. (AR 10). At step two, the ALJ found Ms. Newberry had three severe impairments: degenerative disc disease, chronic obstructive pulmonary disease, and obesity. (AR 10). At step three, the ALJ determined none of Ms. Newberry's impairments or a combination thereof met or medically equaled

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

the severity of one of the Listing impairments. (AR 13). Specifically, the ALJ stated none of Ms. Newberry's impairments met Listing 1.04, which lists spine disorders. (AR 11).

The ALJ then determined Ms. Newberry had the RFC to perform light work, stating Ms. Newberry is able to: frequently balance, stoop, kneel, crouch, crawl, and handle and finger with both hands; occasionally climb ramps and stairs; and never climb ladders, ropes and scaffolds. (AR 13). In formulating the RFC, the ALJ found Ms. Newberry's allegations regarding the severity and limiting effects of her symptoms were not entirely credible and were not supported by objective clinical findings or observations. (AR 15). First, the ALJ discussed inconsistencies between Ms. Newberry's testimony and evidence in the record. (AR 15). For instance, although Ms. Newberry testified at the hearing that she had only used a walker for two weeks, the record reflected Ms. Newberry was using a walker in July, 2013–a year before the hearing. (AR 15). Second, Ms. Newberry complained of severe difficulty with memory, attention, and focus, however she had a perfect score on a mental status exam and demonstrated no difficulties in other mental testing. (AR 16). Further, despite Ms. Newberry's testimony that she is in constant severe pain, treatment records indicate her pain was intermittent and well-managed with medication. (AR 15).

Turning to opinion evidence, the ALJ afforded Duc Truong, M.D.,'s opinion little weight. (AR 16). In a Physical Medical Source Statement (the "Source Statement") and a Physical Residual Functional Capacity Questionnaire (the "Questionnaire"), Dr. Truong assessed Ms. Newberry as having significant limitations. (AR 534-38). The ALJ noted that Dr. Truong indicated he treated Ms. Newberry for only six months. (AR 16, 536-38). The ALJ then acknowledged Dr. Truong was Ms. Newberry's treating physician

and an acceptable medical source. (AR 16). However, the ALJ found Dr. Truong's opinions were internally inconsistent, inconsistent with the entirety of the record, and inconsistent with his own reports. (AR 17). For instance, in the Source Statement, Dr. Truong indicated Ms. Newberry may frequently lift less than ten pounds, occasionally lift ten pounds, rarely lift twenty pounds, and never lift fifty pounds. (AR 536). But in the Questionnaire dated the same day, Dr. Truong stated Ms. Newberry cannot lift anything or ever carry more than ten pounds. (AR 538). Further, the ALJ found the significant limitations inconsistent with Ms. Newberry's conservative treatment and an MRI of Ms. Newberry's back, which showed only mild deformities. (AR 17).

The ALJ gave agency consulting medical opinions great weight, but found that Ms. Newberry has more limitations than the consultants found. (AR 17). At the hearing, Ms. Newberry's counsel asked Ms. Newberry to pick up a cup and asked the ALJ to observe Ms. Newberry's hand. (AR 41). The ALJ observed Ms. Newberry's hand shaking; therefore, the ALJ assigned more significant limitations than previously recommended. (AR 17).

The ALJ then considered a Third Party Function Report completed by Nathaniel Weinstein, Ms. Newberry's son. (AR 17). Mr. Weinstein reiterated Ms. Newberry's claims as to her limitations. (AR 17, 168-77). The ALJ stated she considered Mr. Weinstein's statement in accordance with Social Security Ruling ("SSR") 06-03p, including the nature and extent of Mr. Weinstein's relationship with Ms. Newberry, whether Mr. Weinstein's statement is consistent with other evidence in the record, and "any other factor that tends to support or refute" Mr. Weinstein's statement." (AR 18).

Ultimately, the ALJ assigned Mr. Weinstein's statement little weight. (AR 18). Although Mr. Weinstein expressed opinions regarding Ms. Newberry's limitations, the ALJ stated Mr. Weinstein "is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms." (AR 18). Further, the ALJ found Mr. Weinstein "cannot be considered a disinterested third party" with an unbiased opinion about Ms. Newberry given their personal relationship. (AR 18). "Most importantly," the ALJ stated, Mr. Weinstein's opinion was "simply not consistent with the preponderance of the opinions and observation[s] by medical doctors" in the record. (AR 18).

Proceeding to step four, the ALJ found that Ms. Newberry has the RFC to perform her past relevant work as a cashier. (AR 18). The ALJ found that Ms. Newberry could not perform her past work as a cashier as she actually performed it, given the actual physical requirements of Ms. Newberry's former positions. (AR 19). However, the ALJ found that Ms. Newberry could perform her past relevant work as a cashier "as it is generally performed in the national economy." The ALJ relied on the VE's testimony in so finding. (AR 19). Because Ms. Newberry could perform her past relevant work, the ALJ determined Ms. Newberry was not disabled and therefore not entitled to DIB. (AR 19-20).

### IV.    Analysis

Ms. Newberry alleges the ALJ: (1) gave illegitimate and inadequate reasons for rejecting Dr. Truong's opinion; (2) erred in determining Ms. Newberry did not meet Listing 1.04; (3) incorrectly applied legal standards in formulating the RFC and did not support the RFC with substantial evidence; (4) failed to apply the correct legal standard

in evaluating Mr. Weinstein's statement; and (5) erred in finding Ms. Newberry could perform her past relevant work "as generally performed." The Court will address each argument in turn.

### a. _Whether the ALJ erred in rejecting Dr. Truong's opinion_

Ms. Newberry first alleges the ALJ erred by rejecting Dr. Truong's opinion. (Doc. 20 at 9-13). Ms. Newberry argues the ALJ's reasons for rejecting Dr. Truong's opinion were "either facially invalid or not sufficiently specific to permit meaningful judicial review." (Doc. 20 at 11). Defendant counters that the ALJ reasonably discounted Dr. Truong's opinion as inconsistent with the record as a whole. (Doc. 22 at 11-12).

ALJs must evaluate every medical opinion in the record. 20 C.F.R. § 404.1527(c). When evaluating a treating source's medical opinion, the ALJ must first determine whether the treating source's opinion is well-supported by diagnostic techniques and is consistent with other substantial evidence in the record. § 404.1527(c)(2). If the treating source's opinion does not meet those criteria, the ALJ must determine how much weight to give the opinion. _Id._ In deciding how much weight to give a treating source's opinion, the ALJ may consider the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, whether the opinion is supported by objective medical evidence, and whether the opinion is consistent with the record as a whole. § 404.1527(c)(i)-(ii). An ALJ need not explicitly discuss every single factor. _Oldham v. Astrue_, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, the ALJ must only "give good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight" she gave to

the opinion "and the reasons for that weight." SSR 96-2P, 1996 WL 374188 at *5 (July 2, 1996).

As discussed, Dr. Truong opined that Ms. Newberry had significant functional limitations affecting nearly all aspects of her ability to work. (AR 16, 534-38). In evaluating Dr. Truong's opinion, the ALJ first found that Dr. Truong's opinion was inconsistent with the record as a whole. (AR 16). The ALJ then assigned Dr. Truong's opinion "little weight" because it was "internally inconsistent, inconsistent with the entirety of the records," and inconsistent with his Source Statement and the Questionnaire. (AR 17). The ALJ cited how long Dr. Truong treated Ms. Newberry (six months), the internal inconsistency within the Source Statement and Questionnaire, and how Dr. Truong's opinion was unsupported by objective medical evidence. (AR 17). In particular, the ALJ noted Ms. Newberry's MRI showed only "mild changes" and the fact that Ms. Newberry has undergone "conservative treatment modalities such as medication, physical therapy, and injection therapy." (AR 17). The ALJ reasoned that evidence did not support Dr. Truong's severe limitations. (AR 17). In sum, the ALJ concluded the evidence did not support "the degree of limitations Dr. Truong" assessed. (AR 17).

In accordance with § 404.1527(c), the ALJ first found Dr. Truong's opinion inconsistent with objective medical evidence, then explicitly assigned the opinion "little weight" and supported that determination with specific citations and consideration of the record. These reasons are sufficiently specific and clear for the Court to understand the ALJ's reasoning. Accordingly, the Court finds the ALJ applied the correct legal standard and supported her decision with substantial evidence.

b. _Whether the ALJ erred by finding Ms. Newberry did not meet Listing 1.04_

Ms. Newberry next argues that the ALJ erred by finding Ms. Newberry did not meeting Listing 1.04. (Doc. 20 at 13). Ms. Newberry protests that the ALJ's "boilerplate" rejection was "clearly erroneous" and not supported by substantial evidence. (Doc. 20 at 14). Defendant responds that it was Ms. Newberry's burden to prove she met the Listing, the evidence in the record does not establish Ms. Newberry met the Listing, and the ALJ's RFC discussion provides substantial evidence for her determination. (Doc. 22 at 5-6).

At step three, the ALJ considers whether a claimant's impairments equal one of the Listing impairments, which are "so severe as to preclude substantial gainful activity." _Bowen v. Yuckert_, 42 U.S. 137, 141 (1986). In order to meet a Listing, a claimant's impairments "must meet _all_ the specified medical criteria." _Sullivan v. Zebley_, 493 U.S. 521, 530 (1990) (emphasis in original). In considering whether a claimant meets a Listing, the ALJ may not "state[ ] a summary conclusion" that a claimant's "impairments did not meet or equal a Listing." _Clifton v. Chater_, 79 F.3d 1007, 1009 (10th Cir. 1996). Rather, the ALJ must "discuss the evidence and explain why [s]he found that the claimant was not disabled." _Id._ (citing _Cook v. Heckler_, 783 F.2d 1168, 1172-73 (4th Cir. 1986)). However, the ALJ may support her determination at step three by thoroughly discussing medical evidence at steps four and five. _See Fischer-Ross v. Barnhart_, 431 F.3d 729, 733-35 (10th Cir. 2005).

Listing 1.04 lists spinal disorders. The Listing includes degenerative disc disease, which Ms. Newberry has. However, the Listing requires

> [e]vidence of nerve root compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine, motor loss (atrophy

with associated muscle weakness or muscle weakness) accompanied by
sensory or reflex loss and, if there is involvement of the lower back,
positive straight-leg raising test (sitting and supine).

20 C.F.R. pt. 404, subpt. P, app. 1, 1.04(A).[2]

In her decision, the ALJ stated she reviewed all evidence relevant to whether Ms. Newberry met Listing 1.04. (AR 13). The ALJ specified her finding was consistent with the agency's prior findings that Ms. Newberry did not meet a Listing, and that no evidence was presented at the hearing level which would alter her conclusion. (AR 13). At step four, the ALJ discussed Ms. Newberry's MRI, which showed only mild degeneration and deformities. (AR 15). Regarding evidence of nerve root compression, the ALJ noted Ms. Newberry's MRI shows only that vertebra "just abut[ ]" the nerve root at two places, but otherwise shows no "nerve root impingement." (AR 15). Further, the ALJ discussed how Ms. Newberry regularly reported pain in her lower back and extremities, and that her doctors observed decreased range of motion and positive bilateral straight leg tests. (AR 15-18). Finally, as for motor loss, the ALJ considered Ms. Newberry's use of a walker and cane and observed that Ms. Newberry's gait was normal in February, 2014. (AR 15).

While some evidence in the record supports Ms. Newberry's claim she meets Listing 1.04, the ALJ's decision is supported by "evidence a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. Ms. Newberry's MRI shows only mild (if any) nerve root compression. (AR 527-28). Further, Ms. Newberry's intermittent use of a

---

2. Ms. Newberry does not specify which of the sub-listings she argues she meets, but Listing 1.04 also includes "B. spinal arachnoditis" and "C. spinal stenosis . . . manifested by nonradicular pain." 20 C.F.R. pt. 404, subpt. P, app. 1, 1.04. The record contains no evidence of arachnoditis, and Ms. Newberry was consistently treated for radicular pain, as evidenced by the consistent diagnoses of "radiculopathy." (AR 538) Therefore, the Court will consider only sub-criteria A.

cane reasonably indicates Ms. Newberry did not exhibit motor loss, muscle weakness, sensory or reflex loss, as required by the Listing.

Additionally, the ALJ's determination is not overwhelmed by evidence showing Ms. Newberry met all the requirements. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While Ms. Newberry used a cane, which suggests "motor loss," she did so irregularly: she presented without a cane in April, 2013, (AR 332), and February 2, 2014, (AR 461), and with one in August, 2013, (AR 329), and March and April 2014. (AR 459, 523). Ms. Newberry points out that in May, 2012, her leg "gave out" due to pain. (Doc. 20 at 14). Although persuasive, that one incident occurred one month before Ms. Newberry's alleged disability onset date and does not "overwhelm" the evidence the ALJ relied on. Accordingly, the Court finds the ALJ supported her decision that Ms. Newberry did not meet Listing 1.04 with substantial evidence.

### c.  *Whether the ALJ erred in her RFC determination*

Next, Ms. Newberry alleges that the  ALJ erred at step four by finding Ms. Newberry's fibromyalgia, insomnia, and hand problems were not medically determinable impairments. (Doc. 20 at 15). Ms. Newberry also argues the ALJ erred by failing to discuss whether her cane was medically necessary. (Doc. 20 at 16). Defendant responds that Ms. Newberry failed to establish that her fibromyalgia and insomnia were medically determinable impairments, and any alleged error was harmless. (Doc. 22 at 4-5). Further, Defendant argues the ALJ reasonably relied on her own observations regarding Ms. Newberry's hands. (Doc. 22 at 13). Defendant does not directly address Ms. Newberry's arguments regarding her cane.

*i.* *Medically Determinable Impairments*

It is Ms. Newberry's burden to demonstrate she has a medically determinable severe impairment. § 404.1520(d). A "medically determinable impairment" must be established by "medical evidence consisting of signs, symptoms, and laboratory findings." § 404.1508. "Signs" are "anatomical, physiological, or psychological abnormalities" that must be "shown by medically acceptable clinical diagnostic techniques." § 404.1528(b). "[T]he failure to find a particular impairment severe . . . is not reversible when the ALJ finds that at least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). In *Allman*, the plaintiff alleged the ALJ erred by finding the plaintiff's headaches were not severe. *Id.* at 1329. The Tenth Circuit held that any error was harmless given the fact that the ALJ found other impairments severe and discussed the plaintiff's headaches in formulating an RFC. *Id.* at 1330-31.

In this case, the ALJ found that Ms. Newberry's fibromyalgia, insomnia, and neuropathy in her hands were not medically determinable impairments "because there has been no diagnosis and no diagnostic testing has been performed" to establish those impairments. (AR 13). Nonetheless, the ALJ considered Ms. Newberry's pain, sleep disorder, and hand problems in the RFC discussion. (AR 14-15). The ALJ thoroughly discussed Ms. Newberry's allegations regarding her pain, finding her allegations were inconsistent with the record. (AR 14-15). The ALJ also noted that Ms. Newberry routinely denied her pain affected her sleep and scored well on a Mental Status Exam, indicating lack of sleep or fatigue did not affect her attention. (AR 15). Finally, the ALJ incorporated Ms. Newberry's hand problems into the RFC based on Ms. Newberry's hands shaking at the hearing. (AR 18).

Ms. Newberry concedes there is no diagnosis for her hand problems. (Doc. 20 at 15). However, she argues the ALJ erred by finding no diagnoses for fibromyalgia and insomnia, as both appear repeatedly in the record. (AR 324, 354, 358, 363, 368, 377, 390, 393, 398, 402, 441, 443, 446, 449, 451, 453, 454, 517, 520, 522, 526) (fibromyalgia listed as "existing problem" or "chronic problem"); (AR 262, 277, 280, 287, 328, 331, 333, 445, 449, 450, 492, 520, ) (insomnia notations). Following *Allman*, the Court finds any error here harmless. The ALJ found three severe medically determinable impairments and proceeded beyond step two. (AR 10). The ALJ then thoroughly discussed Ms. Newberry's pain, her sleep disorder, and her hand problems in formulating the RFC. Thus, the Court sees no reason to reverse based on the ALJ's failure to find Ms. Newberry's conditions "medically determinable," given the ALJ considered and discussed them all. The alleged error here is not exactly the same as *Allman*, but the principle is the same: the ALJ thoroughly discussed all three impairments, obviating the need to remand and require the ALJ to find them "medically determinable."

*ii.*   *Whether the ALJ erred regarding Ms. Newberry's cane*

Ms. Newberry argues the ALJ was required to discuss whether her cane was medically necessary to balance and walk. (Doc. 20 at 16). Ms. Newberry does not provide authority directly supporting the proposition that ALJs must discuss whether canes are medically necessary. Rather, Ms. Newberry appears to argue that the ALJ was required to discuss it under the RFC generally. (Doc. 20 at 16).

In order to establish a cane as medically necessary, the record must include "medical documentation establishing the need for [a cane] to aid in walking or standing,

14

and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-09p, 1996 WL 374185 *7 (July 2, 1996). A prescription is not necessary to establish a cane as medically necessary. *Staples v. Astrue*, 2009 WL 1383382 *2, 329 Fed.Appx. 189, 191-92 (10th Cir. May 19, 2009) (unpublished). In *Staples*, the Tenth Circuit Court of Appeals held an ALJ erred by requiring a claimant to have a prescription for a cane in order to find it medically necessary. *Id.* at 192. However, the Tenth Circuit held the ALJ's error was harmless because there was "no indication . . . of the medical necessity for using the cane" or the circumstances for which it was needed. *Id.*

In her decision, the ALJ did not specifically discuss whether Ms. Newberry's cane was medically necessary. (AR 332-343, 347-426).  However, the ALJ did discuss Ms. Newberry's allegations she needed a cane and walker, (AR 14), Dr. Truong's opinion that Ms. Newberry needed a cane, (AR 15), and Mr. Weinstein's statement that Ms. Newberry needed a walker or cane. (AR 18). Dr. Truong's opinion is the only medical evidence in the record establishing the circumstances in which Ms. Newberry needed a cane. In his Source Statement, Dr. Truong checked "yes" that Ms. Newberry needed a cane or other hand-held assistive device "[w]hile engaging in occasional standing/walking." (AR 535). The ALJ mentioned this in her discussion and overall rejection of Dr. Truong's opinion. (AR 16).

Assuming the ALJ was required to specifically discuss whether or not Ms. Newberry's cane was medically necessary, the Court finds any failure to do so harmless. Error is harmless where, "based on material the ALJ did at least consider

15

(just not properly)," the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). As discussed, the record must contain medical documentation establishing medical necessity and the circumstances in which a cane is necessary. *Staples*, 329 Fed.Appx. at 192 (medical necessity "requires more than generalized evidence of a condition that might require use of a cane"). The ALJ validly rejected Dr. Truong's opinion, which is the only evidence related to the circumstance requirement. Besides the box Dr. Truong checked, there is simply no medical documentation describing when Ms. Newberry needs a cane. Without such evidence, she cannot establish medical necessity, and no reasonable factfinder could find otherwise. Thus, even assuming the ALJ was required to discuss whether Ms. Newberry's cane was medically necessary, the Court finds no reversible error. *Accord id.* (finding no error where circumstance evidence is "entirely absent").

d.  <u>Whether the ALJ erred  in evaluating Mr. Weinstein's statement</u>

Ms. Newberry next contends that the ALJ did not apply the correct legal standard in considering Mr. Weinstein's Third Party Functional Report. Specifically, Ms. Newberry argues the ALJ did not make sufficiently specific credibility findings, in contravention of SSR 06-03P, 2006 WL 2329939 (August 9, 2006). Defendant argues the ALJ's reasons were sufficiently specific.

ALJs are required to consider all relevant opinions in the record, including those from "other sources," like family members. 20 C.F.R. § 404.1527(b). ALJs are generally required to "explain the weight given to opinions from 'other sources,' or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer

to follow" the ALJ's reasoning. SSR 06-03P at *6. An ALJ should consider how long the source has known the claimant, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support its opinion, how well the source explains the opinion, whether the source has a specialty or area of expertise related to the claimant's impairments, and "any other factors that tend to support or refute the opinion." *Id.* at *4-5. An ALJ need not discuss all of the factors, nor any single factor at length. *Mounts v. Astrue*, 479 Fed. Appx. 860, 866, 2012 WL 1609056 *6 (10th Cir. May 9, 2012). Rather, an ALJ need only provide "good reasons" that are "sufficiently specific to make clear to any subsequent reviewer the weight the adjudicator gave to . . . the opinion and the reasons for that weight." *Id.* (internal quotation and citation omitted).

Here, the ALJ stated she "considered the statement of Mr. Weinstein in accordance with SSR 06-03P, including the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." (AR 18). Ultimately, the ALJ gave Mr. Weinstein's statement "little weight" because he is not medically trained to make the observations he did, he could not be considered an unbiased third party by nature of his relationship with Ms. Newberry and, "[m]ost importantly," Mr. Weinstein's statement was "simply not consistent with the preponderance of the opinions and observation[s] by medical doctors in this case." (AR 18). The Court finds these reasons sufficiently specific to make clear what weight the ALJ assigned and why. The ALJ cited specific factors she considered and specific evidence in support. The Court therefore finds the correct legal standards were applied.

Ms. Newberry protests that the ALJ may not reject Mr. Weinstein's statement simply because he is Ms. Newberry's son. (Doc. 20 at 19) (citing *Kandt v. Astrue*, 2013 WL 451648 (D.Kan. 2013)). The ALJ did not, however, reject the opinion for that reason alone. Thus, Ms. Newberry's argument is unavailing.

> e. <u>Whether the ALJ erred by finding Ms. Newberry could perform her past relevant work "as generally performed."</u>

Finally, Ms. Newberry alleges the ALJ erred by considering whether Ms. Newberry could perform her past relevant work "as generally performed." Ms. Newberry argues her past relevant work as a cashier was a "composite job" that may only be considered as it was actually performed–not as it is generally performed. Defendant responds that the ALJ's determination was supported by substantial evidence, namely the VE's testimony.

Composite jobs are jobs that "have significant elements of two or more occupations, and, as such, have no counterpart" in the Dictionary of Occupational Titles ("DOT"). SSR 82-61, 1982 WL 31387 *2 (Jan. 1, 1982). The Social Security Administration Programs Operations Manual ("POMS") states that if a job can only be accurately described by considering multiple DOT occupations, the job may be a composite job. POMS DI 25005.020(B). ALJs should not consider composite jobs "as generally performed in the national economy." *Id*. For instance, in *Armstrong v. Sullivan*, a claimant worked simultaneously as a cook and cashier at a barbecue restaurant. 814 F.Supp. 1364, 1371 (W.D.Tex. 1993). The ALJ found the claimant able to perform her job as a cashier, therefore able to perform her past relevant work. *Id*. at 1371. The District Court reversed, finding the claimant's job "clearly" a composite job and holding the ALJ erred by splitting the composite job in two. *Id*. at 1372. Similarly, in *Armstrong v.*

*Colvin*, a VE testified the claimant had two DOT occupations in one job. NO. CIV-16-114-SM, 2016 WL 6581343 *2 (W.D. Okla. Nov. 4, 2016). The ALJ found the claimant could perform the two separate jobs as generally performed, rather than the one job as actually performed. *Id*. On appeal, the District Court held the ALJ committed legal error by splitting the one job and finding the claimant could perform the two separate jobs as they are generally performed. *Id*.

At the hearing before the ALJ, Ms. Newberry testified she previously worked as a cashier and greeter at Wal-Mart and as a cashier at a gas station. (AR 33-34). Ms. Newberry testified she also cooked, cleaned, stocked, and made sure the gas pumps worked properly at the gas station. (AR 46). VE Kinnier testified both of Ms. Newberry's jobs qualified as "cashier" under the DOT. (AR 48). Further, the VE testified that although Plaintiff could not perform her previous jobs as she actually performed them, Plaintiff could perform a "cashier" job as generally performed, "in certain sites." (AR 49-50). In her decision, the ALJ relied on that testimony in finding that Ms. Newberry's past relevant work was a "cashier" and Ms. Newberry could perform that occupation as it is generally performed. (AR 18-19). The ALJ did not find Ms. Newberry's past relevant work was a composite job.

Because the ALJ did not find Ms. Newberry's past relevant work was a composite job, she could not have committed the error Ms. Newberry claims. That is, the ALJ did not err by considering a composite job as it is generally performed because she did not determine Ms. Newberry performed a composite job. In *Armstrong v. Sullivan* and *Armstrong v. Colvin*, the ALJs determined the claimant's past relevant work was a composite job and then considered the component jobs as they are generally

performed. *Armstrong v. Sullivan*, 814 F.Supp. at 1371; *Armstrong v. Colvin*, 2016 WL 6581343 at *2. In this case, the ALJ did not determine Ms. Newberry performed a composite job. The ALJ therefore did not err by considering Ms. Newberry's past relevant work as it is generally performed.

Although Ms. Newberry described cooking, cleaning, and stocking duties, which suggests a composite job, the VE testified that Ms. Newberry's position still fit the definition of "cashier" in the DOT. (AR 18-19, 47). A VE's testimony is clearly evidence a "reasonable mind might accept as adequate to support a conclusion," and the "possibility of drawing two inconsistent conclusions from the evidence" does not render the ALJ's decision unsupported by substantial evidence. *Lax*, 489 F.3d at 1084. Consequently, the Court finds the ALJ's decision supported by substantial evidence as well.

## V.    Recommendation

For the foregoing reasons, the Court finds that the ALJ applied the correct legal standards and supported her decision with substantial evidence. **IT IS THEREFORE ORDERED** that the Ms. Newberry's *Motion to Reverse and Remand for Hearing with Supporting Memorandum*, (Doc. 20), is **DENIED**.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE